**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| WAYNE SCOTT ALLISON, Plaintiff, | ) | |
| v. | ) | Case No. 3:25-cv-05065-RK |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, Defendant. | ) | |

**ORDER**

Before the Court is Plaintiff Wayne Scott Allison's appeal brought under 42 U.S.C. § 405(g) seeking review of the Commissioner of the Social Security Administration's denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). After careful consideration and for the reasons explained below, the Court **ORDERS** that the ALJ's decision is **AFFIRMED**.

**Standard of Review**

The Court's review of the ALJ's decision denying Plaintiff's protective applications for social security benefits is limited to whether the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). The Court "will affirm if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole." *Cropper v. Dudek*, 136 F.4th 809, 813 (8th Cir. 2025) (internal quotation marks omitted).

An ALJ's "failure to comply with [Social Security Act] regulations . . . is [reversible] legal error." *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). To determine whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (internal quotation marks omitted). "If the ALJ's decision is supported by substantial evidence,

[the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis*, 239 F.3d at 966). On judicial review of the ALJ's decision, the Court does not "re-weigh the evidence presented to the ALJ," *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)), and must "defer heavily to the findings and conclusions of the [ALJ]," *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).

**The Five Step Sequential Analysis for Disability Benefits**

To determine whether a claimant is entitled to benefits under the Social Security Act, the ALJ utilizes a familiar five-step analysis found at 20 C.F.R. §§ 404.1520(a) & 416.920(a), as follows:

At Step One the ALJ considers whether the claimant is engaged in substantial gainful work activity. If not, the ALJ moves to Steps Two and Three to consider whether the claimant has a severe medically determinable physical or mental impairment, or a combination thereof (Step Two), and whether any such impairments meet or are medically equivalent to a Listed Impairment (Step Three). If the ALJ finds that a claimant's impairments, individually or in combination, meet or medically equal a Listed Impairment, found at 20 CFR Pt. 404, Subpt. P, App. 1, the claimant is entitled to disability benefits. Otherwise, the ALJ moves to Step Four of the analysis to assess and consider the claimant's residual functional capacity ("RFC")[1] and to determine whether the claimant can still do any past relevant work considering the claimant's RFC as assessed by the ALJ. In doing so, the ALJ is required to consider the persuasiveness of medical opinions and prior administrative medical findings. *See* 20 C.F.R. §§ 404.1520c & 416.920c. If the ALJ finds that the claimant can perform past relevant work given the ALJ's RFC determination, the claimant is not entitled to benefits. However, if the claimant is unable to perform past relevant work given their assessed RFC, the ALJ finally considers at Step Five whether the claimant can do other work that exists in significant numbers in the national economy considering the claimant's RFC,

[1] A claimant's RFC "is the most [the claimant] can do" despite any "physical and mental limitations that affect what [the claimant] can do in a work setting" caused by a claimant's impairment(s) and related symptoms. 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). The ALJ's RFC assessment must be based on "all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (internal quotation marks omitted). Although it is a medical question and must be based on some medical evidence, "it is ultimately an administrative determination" for the ALJ. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

alongside their age, education, and work experience, and the corresponding testimony of a vocational expert. If the ALJ determines that the claimant cannot do so, the claimant is entitled to disability benefits.

**Discussion**

By way of overview, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy and displacement of descending cauda equina nerve roots, major depressive disorder, generalized anxiety disorder, diabetes mellitus, and obesity. The ALJ also determined that Plaintiff has the following non-severe impairments: gastroesophageal reflux disease (GERD), hypertension, and hyperlipidemia. However, the ALJ found that none of Plaintiff's impairments, whether considered alone or in combination, meet or medically equal the criteria of a Listed Impairment.

Additionally, the ALJ found that despite his limitations, Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 41967(a). Plaintiff can occasionally climb, balance, stoop, kneel, crouch, and crawl. He cannot climb ladders, ropes, or scaffolds. He should avoid concentrated exposure to temperature extremes, vibration, and work hazards. Plaintiff can occasionally work or reach overhead with his bilateral upper extremities. He is limited to simple work of a routine and repetitive nature. The ALJ found that Plaintiff was unable to perform past relevant work but that he could perform other work.

On appeal, Plaintiff claims the ALJ erred in the RFC assessment because (1) the ALJ failed to properly consider the persuasiveness of the mental functional limitations submitted by his treating physician, Dr. Rime Mehannek, M.D., and that the ALJ's determination finding the opinions by Plaintiff's treating physician mostly unpersuasive is not supported by substantial evidence, and (2) the assessed RFC conflicts with Dr. Mehannek's opinion regarding Plaintiff's limited functional ability to sit.

**Point 1: Whether the ALJ properly considered the persuasiveness of Dr. Mehannek's opinions and whether the ALJ's persuasiveness determination is supported by substantial evidence**

In his first point, Plaintiff claims that the ALJ erred as a matter of law in evaluating the persuasiveness of the opinions submitted by Plaintiff's treating physician concerning Plaintiff's mental functional limitations under 20 C.F.R. §§ 404.1520c & 416.920c. Plaintiff also argues that the ALJ's persuasiveness determination is not supported by substantial evidence.

It is well established that the ALJ's evaluation of a claimant's RFC should be "based on all the evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002) (internal quotation marks omitted). A claimant's RFC is a "medical question," and the ALJ's assessment must therefore "be supported by some medical evidence," although "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (internal quotation marks omitted).

In *Cropper v. Dudek*, 136 F.4th 809 (8th Cir. 2025), the Eighth Circuit considered the Social Security Administration regulations governing how ALJ's weigh and evaluate medical opinions in formulating a claimant's RFC. Prior to 2017, an ALJ was generally required to give a treating physician's opinion "controlling weight." *See Cropper*, 136 F.4th at 812. After 2017, however, the revised regulations, codified at 20 C.F.R. §§ 404.1520c & 416.920c, instruct that an ALJ is not to give any specific weight to any particular medical opinion (including one provided by a treating physician), but must instead weigh or evaluate each opinion by considering the supportability, consistency, and specialization of the physician, among other factors. §§ 404.1520c(a), (c) & § 416.920c(a), (c). As specified in the regulations, "[s]upportability and consistency are the most important factors," and must be considered by the ALJ. *Cropper*, 136 F.4th at 813.

The Eighth Circuit also addressed in *Cropper* how a court should consider or review an ALJ's evaluation of medical expert evidence on appeal when a claimant seeks judicial review. The Eighth Circuit made clear that a district court on judicial review should not "reweigh the evidence of record regarding the supportability and consistency factors," but should only ensure that an ALJ "consider[ed] the supportability and consistency factors" and that he "articulat[ed] in his decision how persuasive he found the medical opinions in the case record." *Id.* at 814. To put it another way, rather than re-weighing the evidence, the district court should confirm whether the ALJ's persuasiveness determination (as part of the ALJ's RFC assessment) is supported by substantial evidence. *Id.*

Here, in assessing Plaintiff's physical and mental RFC at Step Four of the disability benefits analysis, the ALJ considered Plaintiff's hearing testimony and the medical and disability-benefits records. (*See* Tr. at 23-27.) The ALJ first found that although the impairments identified above could cause the symptoms identified by Plaintiff (including, *inter alia*, numbness and tingling, difficulty reaching, fatigue, limited mobility, and reduced concentration due to chronic

back pain, as well as difficulty focusing and completing tasks), Plaintiff's statements about the "intensity, persistence, and limiting effects" of his symptoms are inconsistent with the record. For example, as to his chronic back pain issues, the ALJ found that the objective examination records include relatively normal physical findings (although imaging records do support chronic back pain issues) with treatment that "has generally been conservative overall," primarily relying on medication. (Tr. at 24.) The ALJ noted that the neurosurgeon to whom Plaintiff had been referred did not recommend surgical intervention. (*Id.*) Similarly, as to Plaintiff's mental diagnoses, the ALJ noted that Plaintiff reported improvement after being prescribed sertraline and that objective mental status examinations generally reported normal findings. (Tr. at 25.) In addition, the ALJ noted Plaintiff's "wide range of daily activities," that "requir[e] him to function independently, appropriately, . . . and on a sustained basis," including caring for his small dog, playing video games, preparing meals and performing light housekeeping, managing his finances, spending time with others (in person or via text message), and shopping in stores. (*Id.*)

Next, the ALJ weighed the medical opinions and prior administrative medical findings in the record. First, the ALJ found persuasive the opinions of the state agency medical consultants that Plaintiff "can perform sedentary work with additional postural and environmental limitations."[2] The ALJ noted that these opinions were consistent with the normal or "minimal" objective examination findings, the conservative treatment Plaintiff has received, and his "wide range of daily activity." (Tr. at 26.) The ALJ also found that additional limitations concerning reaching with his bilateral upper extremities were warranted, as well. (*Id.*)

While the ALJ found the opinions of the state agency medical consultants persuasive, the ALJ did not find the opinions of the state agency psychological consultants persuasive. The state agency psychological consultants opined that Plaintiff had no limitations in the so-called "paragraph B" criteria (considering a person's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself). (Tr. at 59, 69, 79, 89.) The ALJ found instead that the record supports various moderate and mild limitations in the "paragraph B" criteria and that a "limitation to simple work of a routine and repetitive nature" was therefore appropriate. (Tr. at 26-27.)

[2] That is to occasionally climb ladders, ropes, and scaffolds, and occasionally stoop, crouch, kneel, and crawl, and to avoid concentrated exposure to vibration and hazards. (Tr. at 61-62, 71-72, 81-82, 91-92.)

Next, the ALJ considered the opinions of Dr. Mehannek, Plaintiff's primary care physician. Dr. Mehannek submitted both a Medical Source Statement—Mental, (Tr. at 599-601), and a Medical Source Statement—Physical, (Tr. at 604-06). In the Medical Source Statement—Mental, Dr. Mehannek addressed Plaintiff's mental health diagnoses of anxiety and depression. He opined that Plaintiff was moderately to extremely limited in several of the "paragraph B" functioning areas, that Plaintiff required an "isolated, supported, or structured lifestyle," that Plaintiff would likely be absent more than 5 days a month, and that Plaintiff would likely be off task at work more than twenty-five percent of the work time due to concentration issues and would have a twenty-five percent slower pace for productive activity. (Tr. at 599-01.) Dr. Mehannek further opined that stress aggravated Plaintiff's mental health symptoms and that he should have no production requirements or deadlines, customer service duties, or decision-making duties, and that he should have "access to unscheduled breaks as needed." (Tr. at 601.) The "Medical Source Statement—Mental" form submitted by Dr. Mehannek appears is a "checkbox" form, and indicates generally (without further explanation or details) that Dr. Mehannek's opinions are based on Plaintiff's medical history, a review of medical records, direct clinical findings, the general nature of Plaintiff's diagnoses and symptoms, and prescribed treatments. (*Id.*)

In the Medical Source Statement—Physical, Dr. Mehannek addressed Plaintiff's functional limitations arising from his degenerative disc disease, lumbar spine fusion, hypertension, and L4-L5 disc bulge, in addition to Plaintiff's mental health diagnoses of depression and anxiety. (Tr. 604.) Dr. Mehannek noted Plaintiff's symptoms as including, *inter alia*, "pain, fatigue, depressed mood, [and] lower back pain," and described side effects of various medications prescribed for these diagnoses, including gabapentin, tramadol, and sertraline. (*Id.*) Dr. Mehannek opined that Plaintiff was functionally limited in that he could only occasionally lift less than ten pounds (but should never carry ten or more pounds) and occasionally balance or climb stairs (but should never bend, stoop, crouch, or crawl). (Tr. at 605.) Dr. Mehannek opined that Plaintiff could sit for thirty minutes at a time and could only sit for less than two hours total in an eight-hour workday, and similarly that Plaintiff could stand for twenty minutes at a time for less than two hours total in an eight-hour workday. (*Id.*) Dr. Mehannek opined that Plaintiff would need six unscheduled breaks during an eight-hour workday for thirty minutes of rest due to pain, fatigue, and side effects of medication. (Tr. at 606.) Finally, Dr. Mehannek again opined that Plaintiff would be off task more

than twenty-five percent of the workday and would likely be absent more than five days per month. (*Id.*)

The ALJ found Dr. Mehannek's opinions "persuasive to the extent that he opined [Plaintiff] is physically limited to a range of sedentary work with additional postural and manipulative limitations." (Tr. 27.) Otherwise, the ALJ found Dr. Mehannek's opinions not persuasive, particularly that Plaintiff would need six additional and unscheduled thirty-minute breaks, that he would be off task for more than twenty-five percent of the time, and that he would be absent more than five days per month. (*Id.*) The ALJ found that "the limitations set forth by Dr. Mehannek are not supported by his treatment notes and are inconsistent with the record as a whole," in that Dr. Mehannek's treatment notes were "generally unremarkable" and indicated "improvement of his back pain with tramadol and meloxicam" and that Plaintiff's treatment was generally or overall conservative in nature and that Plaintiff was able to engage in "a wide range of daily activity." (*Id.*) The ALJ also noted that Dr. Mehannek "is not a mental health expert, and there is no indication he is qualified to assess [Plaintiff]'s mental capacity or set forth appropriate mental limitations." (*Id.*) The ALJ remarked that Dr. Mehannek had utilized a "check-the-box form covering an unspecified time period" and which was "unsupported by specific findings or explanation." (*Id.*)

Although Dr. Mennahek submitted separate "physical" and "mental" medical source statements, *both* statements include Dr. Mennahek's opinions as to Plaintiff's functional limitations arising out of or connected to his anxiety and his major depressive disorder—that is, being off task due to concentration and attention limitations, absenteeism, and unscheduled breaks or pace issues. (*See* Tr. at 599-01, 604-06.) Under these circumstances, although the ALJ could have been more clear in the written decision, the Court is persuaded that the ALJ fairly considered both the supportability and consistency of Dr. Mehannek's opinions as required under the regulations, among other relevant factors such as Dr. Mehannek's area of specialization. The ALJ's analysis of the persuasiveness of Dr. Mehannek's medical source statements should be considered as a holistic and comprehensive analysis rather than in piecemeal fashion as Plaintiff suggests.

To the extent Plaintiff challenges specifically the ALJ's evaluation of the supportability and consistency of Dr. Mehannek's opinions, the Court declines his invitation to reconsider or reevaluate the ALJ's determinations and findings in this regard. *See Cropper*, 136 F.4th at 814 (noting that the Court's job on judicial review is not to "reweigh the evidence of record regarding

the supportability and consistency factors" but is instead to determine whether the ALJ's persuasiveness finding falls within "the available zone of choice" (internal quotation marks omitted)). Here, the ALJ's determination—that Dr. Mehannek's more restrictive limitations were inconsistent with (or not supported by) (1) Dr. Mehannek's own treatment notes, (2) the conservative nature of Plaintiff's treatment, and (3) Plaintiff's "wide range of daily activity"—falls within the permissible zone of choice. *See id.* at 815. Although Plaintiff may disagree with the ALJ's findings, analysis, and reasoning why Dr. Mehannek's overlapping opinions presented through the two medical source statements are not persuasive, that does not entitle Plaintiff to relief on judicial review of the ALJ's decision here. In short, after reviewing the record, the Court discerns no error—legal or otherwise—concerning the ALJ's evaluation of the persuasiveness of Dr. Mehannek's opinions that warrants reversal in this case.

Point 1 is denied.

**Point 2: Whether the RFC assessed by the ALJ conflicts with Dr. Mehannek's opinion that Plaintiff can only sit for two hours in an eight-hour workday**

In addition, Plaintiff argues in Point 2 that the RFC as assessed by the ALJ conflicts with Dr. Mehannek's medical source statements, specifically that Plaintiff can only sit for a total of two hours in an eight-hour workday and for only thirty minutes at a time.[3] The ALJ found Dr. Mehannek's opinions "persuasive to the extent that he opined [Plaintiff] is physically limited to a range of sedentary work with additional postural and manipulative limitations." (Tr. at 27.) The Court is not convinced that the ALJ overlooked any limitation in sitting, however. *See Depover v. Barnhart*, 349 F.3d 563, 567-68 (8th Cir. 2003).

The RFC as assessed determined that Plaintiff could "perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)," with several additional postural and manipulative limitations as specified. (Tr. at 23.) In the decision, the ALJ noted Plaintiff's asserted limitations in sitting and his need to shift position every twenty to thirty minutes. (Tr. at 24.) Moreover, the

[3] Plaintiff also suggests the RFC conflicts with Dr. Mehannek's medical source statement because it did not include any limitation on unscheduled breaks or consider that Plaintiff would be off task for more than twenty-five percent of the workday and that he would be absent for more than five days per month. (Doc. 8 at 20.) Similarly, Plaintiff suggests that the RFC conflicts with Dr. Mehannek's medical source statement regarding Plaintiff's mental functional limitations. The ALJ specifically considered—and rejected—Dr. Mehannek's relevant opinions, however. (Tr. at 27.) As explained above, the Court finds no legal error in the ALJ's weighing of Dr. Mehannek's medical source statements, including the ALJ's conclusion that Dr. Mehannek's relevant opinions are not persuasive. Thus, there is no "conflict" between the RFC as assessed by the ALJ and Dr. Mehannek's medical expert evidence.

Court notes that at the hearing, Plaintiff's counsel questioned the vocational expert whether a hypothetical individual who could perform a sedentary level of work and who had to change position (i.e. from sitting to standing) every twenty to thirty minutes for five minutes with one to two minutes for off-task adjustment time would be precluded from employment. (Tr. at 53-55.) The vocational expert testified that such a hypothetical person would not be precluded from employment. (Tr. at 54-55 ("[I]f they're using a sit/stand at sedentary . . . and if they're not standing and walking more than two hours, that's fine. But if they're standing at their workplace and it takes them one to two minutes, and I'm going to use two minutes as the top part of that, and if that's three times per hour, which is every 20 minutes, that's going to slightly take you off task . . . more in my opinion of 10% which is allowable.")

In formulating Plaintiff's RFC, the ALJ discussed Plaintiff's symptoms and conditions, including his chronic lower back pain, in conjunction with the "generally . . . conservative overall" treatment and "minimal [objective] findings" (including that no surgical intervention was recommended by a referral neurosurgeon and medications that provided some relief) as well as Plaintiff's activities of daily living, including walking and taking out his dog, preparing meals, and driving a car. The Court finds no reversible error here, either.

Point 2 is denied.

## Conclusion

Accordingly, after careful consideration and review of the record before the Court and the parties' submissions on appeal, the Court **ORDERS** that the ALJ's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: September 25, 2026